**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

BOBBY MINNIS,

        Plaintiff,

vs.                          Case No.:     3:15-cv-1200-J-39JRK

OFFICER PITTMAN, et al.,

        Defendants.

_____/

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I.    Status

Plaintiff, an inmate of the Florida Department of Corrections (FDOC), is proceeding in this civil rights action on his Third Amended Complaint ("TAC") (Doc. 64), filed pro se pursuant to 42 U.S.C. § 1983. Plaintiff names as defendants Officer Pittman, Officer Fogle, Sergeant Janosh, and Sergeant Morgan, each of whom is a corrections officer with the FDOC. Previously, Plaintiff filed an Amended Complaint naming 12 defendants, raising wide-ranging claims under the First, Eighth, and Fourteenth Amendments. (Amended Complaint) (Doc. 25). The Defendants filed a Motion to Sever and/or Dismiss Pursuant to Federal Rules of Civil Procedure 18 and 20 (Motion to Sever) (Doc. 35). By a prior Order, the Court granted the Motion to Sever and instructed Plaintiff to file an amended complaint limited to his Eighth Amendment claims against Pittman, Fogle, Janosh, and Morgan for deprivation of food, against Fogle for slamming the cell door's food tray flap on Plaintiff's hand, and against two other officers, Fink and Hartopp, for inciting violence against Plaintiff. (Order Granting Motion to Sever) (Doc. 50). In the TAC, Plaintiff appears to plead

three claims: (1) that Pittman, Fogle, Janosh, and Morgan deprived him of food in violation of the Eighth Amendment, (2) that Fogle used excessive force when he slammed the metal food flap on Plaintiff's hand in violation of the Eighth Amendment, and (3) that Pittman's refusal to give Plaintiff food was in retaliation for filing a grievance, in violation of the First Amendment. Plaintiff does not assert an Eight Amendment claim for incitement of violence. Plaintiff seeks compensatory, punitive, and nominal damages. TAC at 5.

Before the Court is the Motion for Summary Judgment (Motion) (Doc. 93) filed by Pittman, Fogle, Janosh, and Morgan (collectively, Defendants). In the Motion, Officer Fogle argues that Plaintiff failed to exhaust his administrative remedies with respect to the excessive force claim for slamming the food tray flap on Plaintiff's hand. Motion at 4-7. Additionally, Defendants argue that the record does not support either of Plaintiff's Eighth Amendment claims, and that the retaliation claim must fail because the adverse action involved – being deprived of breakfast for nearly a week – would not deter a person of ordinary firmness from pursuing a grievance. Id. at 7-13. Defendants further argue, in the alternative, that Plaintiff's recovery must be limited to nominal damages because he did not suffer any more than a de minimis physical injury. Id. at 13-18. In support of the Motion, Defendants submit the Declaration of Lawanda Sanders Williams, the records custodian of inmate grievance appeals for the Secretary of FDOC, along with a record of Plaintiff's grievance appeals (Def. Ex. A) (Doc. 93-1), excerpts of Plaintiff's deposition (Def. Ex. B) (Doc. 93-2), the Declaration of Albert Carl Maier, M.D., a senior physician with FDOC, along with Plaintiff's FDOC medical records (Def. Ex. C) (Doc. 104, Doc. 104-1), and Plaintiff's FDOC "face sheet" (Def. Ex. D) (Doc. 93-3).

Plaintiff responded in opposition to the Motion. (Response) (Doc. 97). Attached to the Response are Plaintiff's exhibits, which include purported grievance records and declarations. (Pl. Ex.) (Doc. 97-1). Plaintiff also filed his own declaration (Pl. Decl.) (Doc. 98), an affidavit with accompanying documentation (Pl. Aff.) (Doc. 99), and a Statement of Disputed Factual Issues (Pl. Stmt. of Disp. Facts.) (Doc. 100), all of which the Court has considered. Defendant filed a reply to Plaintiff's Response. (Reply) (Doc. 111). Thus, the Motion is ripe for consideration. For the reasons set forth below, Defendants' Motion is due to be granted in part and denied in part.

## II.    Summary Judgment Standard

The Eleventh Circuit has stated the summary judgment standard as follows:

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law controls which facts are material and which are irrelevant. Raney v. Vinson Guard Service, Inc., 120 F.3d 1192, 1196 (11th Cir. 1997). Typically, the nonmoving party may not rest upon only the allegations of his pleadings, but must set forth specific facts showing there is a genuine issue for trial. Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990). A pro se plaintiff's complaint, however, if verified under 28 U.S.C. § 1746, is equivalent to an affidavit, and thus may be viewed as evidence. See Murrell v. Bennett, 615 F.2d 306, 310 n.5 (5th Cir. 1980). Nevertheless, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge." Fed. R. Civ. P. 56(c)(4). "[A]ffidavits based, in part, upon information and belief, rather than personal knowledge, are insufficient to withstand a motion for summary judgment." Ellis v. England, 432 F.3d 1321, 1327 (11th Cir. 2005).

As we've emphasized, "[w]hen the moving party has carried its burden under Rule 56[ ], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."

> *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Unsupported, conclusory allegations that a plaintiff suffered a constitutionally cognizant injury are insufficient to withstand a motion for summary judgment. *See* *Bennett v. Parker*, 898 F.2d 1530, 1532-34 (11th Cir. 1990) (discounting inmate's claim as a conclusory allegation of serious injury that was unsupported by any physical evidence, medical records, or the corroborating testimony of witnesses). Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

*Howard v. Memnon*, 572 F. App'x 692, 694-95 (11th Cir. 2014) (per curiam) (footnote omitted).

### III. The Third Amended Complaint

As noted at the beginning, Plaintiff names four defendants in the TAC: Officer Pittman, Officer Fogle, Sergeant Janosh, and Sergeant Morgan, each of whom is a corrections officer with FDOC at Suwannee Correctional Institute ("Suwannee"). TAC at 2-3. Plaintiff states that he is suing each officer in his individual capacity for violations of the Eighth Amendment. *Id.* Plaintiff alleges that while he was confined at Suwannee, he and his cellmate, Jerry Ross, reported the theft of the dormitory's breakfast biscuits to Officer Pittman. *Id.* at 5. Upon reporting the theft of the biscuits, Officer Pittman "became furious and threatened to see to it that we were starved 'to death.'" *Id.* Then Officer Pittman, along with fellow officers Morgan, Fogle, and Janosh, took turns denying Plaintiff and his cellmate their food. *Id.* As Plaintiff clarified during his deposition, he and his cellmate still received lunch and dinner "with no issues," but he and the cellmate were denied breakfast. Def. Ex. B at 3 (excerpt of Minnis's deposition, p. 66). The denial of breakfast lasted from April 16, 2015, to April 22, 2015, TAC at 5, or for seven days (inclusive of the beginning

and end dates). Plaintiff claims that the denial of breakfast ended only when his and his cellmate's families received letters from them about their "starvation." Id. Plaintiff alleges that the Defendants deprived him of food "in retaliation for reporting Pittman" regarding the theft of the breakfast biscuits. Id. at 4. Additionally, Plaintiff claims that on April 19, 2015, he tried to "reveal on camera that [his] food bag was empty," but that Officer Fogle slammed the metal food tray flap on his hand. Id. at 5. Plaintiff claims Officer Fogle threatened him not to report the hand injury, and that the injury affects his handwriting "to this day." Id. Plaintiff requests compensatory, punitive, and nominal damages for each day he was "starved" by Defendants and for the injury to his hand. Id. Plaintiff also seeks damages for "pain and suffering, emotional suffering, as well as all expenses and court costs involved." Id.

Plaintiff does not organize his claims into enumerated counts, but the TAC seems to raise three claims. Liberally construing the pro se complaint, see Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008), Plaintiff appears to allege (1) that Defendants Pittman, Fogle, Janosh, and Morgan deprived him of food in violation of the Eighth Amendment, (2) that Fogle used excessive force in violation of the Eighth Amendment when he slammed the metal food tray flap on Plaintiff's hand, and (3) that Pittman retaliated against Plaintiff for reporting the theft of the dorm's breakfast biscuits by threatening to starve him to death and denying him food, in violation of the First Amendment. Defendants appear to understand the TAC as raising the same three claims. See Motion at 7-13.

The Court notes that in the Order granting Defendants' Motion to Sever, the Court instructed Plaintiff to file an amended complaint limited to his Eighth Amendment claims against Pittman, Fogle, Janosh, and Morgan for deprivation of food, against Fogle for

slamming the food tray flap on Plaintiff's hand, and against two other officers, Fink and Hartopp, for inciting violence against Plaintiff. Order Granting Motion to Sever at 3. The Order did not say anything about permitting Plaintiff to include a First Amendment retaliation claim. However, the Defendants have not sought to dismiss the retaliation claim on the ground that it is outside the scope of the Order granting the Motion to Sever. In any event, the retaliation claim is based on essentially the same facts as the Eighth Amendment deprivation-of-food claim, which the Court permitted Plaintiff to include in his amended complaint. And although Plaintiff did not reference the First Amendment in the TAC, such an omission is not fatal to a pro se complaint, like this one, that otherwise adequately alleges facts supporting a retaliation claim. <u>Ford v. Hunter</u>, 534 F. App'x 821, 825 (11th Cir. 2013) (pro se plaintiff's failure to cite First Amendment in his complaint did not preclude him from stating a claim for retaliation) (citing <u>United States v. Hung Thien Ly</u>, 646 F.3d 1307, 1316 (11th Cir. 2011)). Accordingly, the Court will consider Defendants' Motion on the Court's finding that Plaintiff has validly pled a claim for retaliation.

## IV.    Exhaustion of Administrative Remedies

Defendants argue that Plaintiff did not exhaust his administrative remedies with respect to the excessive force claim against Officer Fogle for slamming the food tray flap on his hand. Motion at 4-7. "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense … is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." <u>Bryant v. Rich</u>, 530 F.3d 1368, 1374-75 (11th Cir. 2008) (internal quotation marks and citation omitted). Therefore, the Court will treat Defendants' argument as if it is raised in a

motion to dismiss. See Trias v. Fla. Dep't of Corr., 587 F. App'x 531, 534 (11th Cir. 2014) (district court properly construed the defendant's "motion for summary judgment as a motion to dismiss for failure to exhaust administrative remedies").

The Prison Litigation Reform Act of 1995 (PLRA) requires an inmate who challenges prison conditions to "properly exhaust" all available administrative remedies before filing an action under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The purpose of the exhaustion requirement is "to 'afford[ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Woodford v. Ngo, 548 U.S. 81, 93 (2006) (quoting Porter v. Nussle, 534 U.S. 516, 525 (2002)). Thus, proper exhaustion is mandatory and "demands compliance with an agency's deadlines and other critical procedural rules" governing the administrative process. Id. at 90-91; see also Jones v. Bock, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015) ("The PLRA requires 'proper exhaustion' that complies with the 'critical procedural rules' governing the grievance process."). In Ross v. Blake, the Supreme Court instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" 136 S. Ct. 1850, 1862 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the

7

accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cty., 510 F.3d 1312, 1322-23 (11th Cir. 2007)).

The Supreme Court recognizes three circumstances in which administrative remedies are considered unavailable. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Ross, 136 S. Ct. at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Id. Third, an administrative remedy is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

The failure to properly exhaust administrative remedies will bar an inmate from pursuing a claim in federal court. See Woodford, 548 U.S. at 92-93 (noting that "[a] state prisoner is generally barred from obtaining federal habeas relief unless the prisoner has properly presented his or her claims through one complete round of the State's established appellate review process," and concluding that the PLRA demands the same "proper exhaustion"). That said, failure to exhaust under the PLRA is an affirmative defense a defendant must plead. See Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Thus, the defendant bears "the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." Turner, 541 F.3d at 1082.

The Eleventh Circuit has established a two-step process for deciding motions to dismiss for failure to exhaust administrative remedies. See id. at 1084.

> First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust.

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015) ("Whatley I") (describing the Turner exhaustion test) (internal citation omitted).

In reviewing the question of exhaustion, "[t]he only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (per curiam) (emphasis added) (citing Harris v. Garner, 216 F.3d 970, 981 (11th Cir. 2000) (en banc)). "The time the [PLRA] sets for determining whether exhaustion of administrative remedies has occurred is when the legal action is brought, because it is then that the exhaustion bar is to be applied." Goebert, 510 F.3d at 1324 (emphasis added) (citing 42 U.S.C. § 1997e(a)). Therefore, the relevant question before this Court is whether Plaintiff properly exhausted available administrative remedies as of September 6, 2015, when he filed the original complaint.[1] Likewise, the question of the availability of the procedure goes to whether the administrative procedure was available before September 6, 2015. Construing the exhaustion requirement otherwise would render the PLRA "a toothless scheme." Woodford, 548 U.S. at 95.

---

[1] According to Plaintiff, September 6, 2015, is the date on which he filed the original complaint. (Original Complaint) (Doc. 1 at 9).

The FDOC provides inmates with a three-step grievance process for exhausting administrative remedies. As the Eleventh Circuit succinctly described it:

> The grievance procedure applicable to Florida prisoners is set out in § 33-103 of the Florida Administrative Code. Section 33-103 contemplates a three-step sequential grievance procedure: (1) informal grievance; (2) formal grievance; and then (3) administrative appeal. Dimanche, 783 F.3d at 1211. Informal grievances are handled by the staff member responsible for the particular area of the problem at the institution; formal grievances are handled by the warden of the institution; and administrative appeals are handled by the Office of the Secretary of the FDOC. See Fla. Admin. Code. §§ 33-103.005–33.007. To exhaust these remedies, prisoners ordinarily must complete these steps in order and within the time limits set forth in § 33-103.011, and must either receive a response or wait a certain period of time before proceeding to the next step. See id. § 33-103.011(4).

Pavao v. Sims, 679 F. App'x 819, 824 (11th Cir. 2017) (footnote omitted).[2]

To initiate the grievance process, an inmate must file an informal grievance within 20 days of "when the incident or action being grieved occurred" by completing Form DC6-236, Inmate Request. Fla. Admin. Code § 33-103.011(1)(a). The responsible staff member must complete a written response to the informal grievance within 10 calendar days of receiving it. Id. § 33-103.011(3)(a). If the inmate is dissatisfied with the response, or if time expires for the official to respond to the informal grievance, then the inmate may file a formal grievance within 15 days of receiving the unsatisfactory response or from the expiration of the time to respond, see id., §§ 33-103.011(1)(b), 33-103.011(4).[3] Formal grievances must be addressed to the warden, assistant warden, or deputy warden using

---

[2]     There are exceptions to this three-step sequential process. For example, a prisoner may skip the informal grievance step and file a formal grievance for grievances "of an emergency nature," medical grievances, and grievances involving sexual abuse. Fla. Admin. Code § 33-103.005(1). Additionally, a prisoner may skip both the informal and formal grievance steps and directly file a grievance with the Secretary of FDOC for grievances of reprisal and emergency grievances. Id.

[3]     If the inmate is skipping the informal grievance step because, for example, he is filing a formal grievance of an emergency nature, then he must file the formal grievance within 15 days of the date "on which the incident or action being grieved occurred." Id., § 33-103.011(1)(b)2.

Form DC1-303, Request for Administrative Remedy or Appeal. Id. § 33-103.006(1). The institutional grievance coordinator must log all formal grievances and provide inmates with receipts. Id., § 33-103.006(2)(h). Within 20 calendar days of receiving the formal grievance, the reviewing authority must complete an investigation and provide the inmate a written response. Id., §§ 33-103.006(6), 33-103.011(3)(b). If the formal grievance process does not resolve the inmate's complaint, or if time expires for the reviewing authority to respond, the inmate may proceed to the third and final step: filing an appeal to the Office of the Secretary. See id., §§ 33-103.007(1), 33-103.011(4). The inmate has 15 days to file an appeal (running from receipt of the response to the formal grievance or expiration of the time to respond), again using Form DC1-303, Request for Administrative Remedy or Appeal. The appeal is sent to the Bureau of Policy Management and Inmate Appeals, id., § 33-103.007(3), which must log all appeals and forward receipts to the inmates, id. § 33-103.007(4)(b). The Secretary must respond to the grievance appeal within 30 calendar days of receiving it. Id., § 33-103.011(3)(c). Once a Florida prisoner has completed this three-step process, he is considered to have exhausted his administrative remedies. See Chandler v. Crosby, 379 F.3d 1278, 1288 (11th Cir. 2004).

In the Motion, Defendants assert that Plaintiff failed to exhaust administrative remedies regarding the excessive force claim against Officer Fogle for slamming the food tray flap on his hand. Motion at 4-7. In support, Defendants attached the Declaration of Lawanda Sanders Williams, the records custodian of inmate grievance appeals for the Secretary of FDOC, along with a log of Plaintiff's grievance appeals. (Def. Ex. A). Ms. Williams states that she undertook a review of Plaintiff's appeal log and grievance file. Id. at 1 ¶ 2. According to Ms. Williams, FDOC's records show that while Plaintiff filed grievance

appeals "claiming that he was being denied food by FDOC staff in April 2015, specifically [appeal] #15-6-17488 and #15-6-23417," id. at 1-2 ¶ 4, he did not file a grievance appeal "related to a staff member slamming Mr. Minnis's hand with the flap on Mr. Minnis's cell door on April 19, 2015," id. at 1 ¶ 3. As such, Defendants and Ms. Williams assert that Plaintiff failed to exhaust his administrative remedies with respect to that incident.[4]

A close reading of Plaintiff's response reveals that he does not deny failing to exhaust administrative remedies – with respect to the excessive force claim against Officer Fogle – before bringing the instant lawsuit on September 6, 2015. See Response at 1-5. Plaintiff contends that he tried filing informal or formal grievances, but they were never responded to or went missing (though he does not completely describe the content of the missing grievances). Id. at 3-4 (citing Doc. 97-1 at 2-3, 6) (what Plaintiff refers to as "exhibit A002" and "exhibit A004"). However, even assuming this to be true, Plaintiff does not assert that when the time elapsed for the responsible official to respond to the unanswered grievances, he exercised his right to initiate the next step of the grievance process. See Fla. Admin. Code § 33-103.011(4) ("[E]xpiration of a time limit at any step in the process shall entitle the complainant to proceed to the next step of the grievance process."). Thus, Plaintiff does not contradict Ms. Williams's statement that he did not file any appeals

---

[4]     Of course, the absence of an appeal concerning the food flap incident would not indicate a failure to exhaust if Plaintiff had filed a grievance at the institutional level and such a grievance had been approved. Williams v. Dep't of Corr., 678 F. App'x 877, 880-81 (11th Cir. 2017) (approval of grievance at the institutional level satisfies the PLRA's exhaustion requirement). Plaintiff, however, does not assert that such was the case. See Response at 1-5. Therefore, in this case, the failure of Plaintiff to file any appeals with the FDOC Secretary does indicate a failure to exhaust.
    While Plaintiff filed an informal grievance on December 24, 2015 concerning Officer Fogle slamming the food tray flap on his hand, which was "approved" and referred to the Office of the Inspector General (Doc. 97-1 at 4-5), this grievance does not satisfy the exhaustion requirement because Plaintiff filed it after initiating the lawsuit. A prisoner must exhaust administrative remedies before bringing the lawsuit, not at some later point. Smith, 491 F. App'x at 83.

regarding Officer Fogle slamming the food tray flap on his hand, and thus did not exhaust his administrative remedies. Moreover, while Plaintiff refers to some grievances he filed or attempted to file after September 6, 2015, <u>see</u> Response at 3-4; Doc. 97-1 at 2-6, such grievances are irrelevant to the exhaustion analysis. That is so because the PLRA requires a prisoner to exhaust his administrative remedies <u>before</u> filing the <u>original</u> complaint. <u>Smith</u>, 491 F. App'x at 83 (citing <u>Harris</u>, 216 F.3d at 981).

Rather, Plaintiff claims that administrative remedies were rendered unavailable because of threats of retaliation by prison staff, including Officer Fogle and his supervisor. Response at 3-4. Assuming these facts to be true, as step one of the <u>Turner</u> test requires, 541 F.3d at 1082, Plaintiff's failure to exhaust would be excused. When "a prison official's serious threats of substantial retaliation against an inmate for lodging in good faith a grievance make the administrative remedy 'unavailable,' ... the exhaustion requirement as to the lodging a grievance or pursuing a particular part of the process" is lifted. <u>Id.</u> at 1085.

Thus, the Court must turn to step two of the <u>Turner</u> analysis. In step two, "the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust." <u>Whatley I</u>, 802 F.3d at 1209 (citation omitted). Unlike in the summary judgment posture, a district court must weigh the evidence and make credibility determinations "to resolve disputes of fact" about whether "defendants have shown a failure to exhaust." <u>See id.</u>; <u>see also</u> <u>Whatley v. Smith</u>, — F.3d —, 2018 WL 3616779, at *8 (11th Cir. July 30, 2018) ("The district court permissibly weighed the evidence and credited the defendants' affidavits over Mr. Whatley's exhibits.") ("<u>Whatley II</u>"); <u>Bryant</u>, 530 F.3d at 1373-74 (a district judge may act as a factfinder in resolving factual disputes about exhaustion under the PLRA). A prison official's serious threats of retaliation

will make administrative remedies "unavailable" when "(1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." Turner, 541 F.3d at 1085.

The Court has reviewed all of the Plaintiff's and Defendants' exhibits, and does not find that the alleged threats of retaliation "actually … deter[red] the plaintiff inmate from lodging a grievance or pursuing a particular part of the process." Id. The record as a whole contradicts Plaintiff's claim that Officer Fogle or others threatened him with retaliation if he reported Officer Fogle for slamming the food flap on his hand. The record further reflects that, even if Plaintiff was threatened not to report the food flap incident, such threats are not what prevented him from exhausting his administrative remedies.

The Court begins with Plaintiff's statement in his declaration that after Officer Fogle slammed the food tray flap on his hand, "he was immediately threatened not to report the matter." (Doc. 98 at 1-2 ¶ 3). Plaintiff testified in his deposition that Officer Fogle "said he was going to gas me if I said anything" about the incident. (Def. Ex. B at 6). However, the affidavit of Plaintiff's cellmate, Jerry Ross, contradicts Plaintiff's version of events. Ross stated in pertinent part:

> On 4-19-15 at breakfast time, ofc Fogle the serving officer, that once when our religion diet[s] were put on the flap, I grab one to check to see if my food was their [sic], my bunky [Plaintiff] was looking through the cell window trying to check his bag, when the run-around came by, and took his forearm, and tried to push the bag, and my bunky hands into the cell, then ofc Fogle came, and pushed the bag, and my bunky hand into the cell, then ofc. Fogle stated, "The next time you do that I will gas you."

(Def. Ex. A at 12 ¶ 3) (emphasis added). Contrary to Plaintiff's allegation, Ross states that Officer Fogle threatened to "gas" Plaintiff the next time he put his hands through the food flap, not that Officer Fogle threatened to "gas" Plaintiff if he reported Officer Fogle. Ross does not say anything about Officer Fogle threatening to harm Plaintiff <u>for reporting</u> the food flap incident. Thus, Ross's account is at odds with Plaintiff's version of the facts. The Court finds Ross's account to be more credible on balance. As a non-party, Ross has no obvious incentive to be untruthful. Plaintiff, on the other hand, does have an incentive to be less than honest about whether Officer Fogle threatened him not to report the incident because such a threat could excuse his failure to exhaust. Thus, the Court is inclined to credit Ross's account of events, which does not reflect that Officer Fogle threatened Plaintiff if he reported the food flap incident.

Second, not only does Ross's affidavit contradict Plaintiff's account, Plaintiff contradicts himself as well. Whereas Plaintiff now claims that Officer Fogle immediately threatened him not to report the April 19, 2015 food flap incident, that is not what Plaintiff wrote the very next day in a pair of grievances filed on April 20, 2015. (Def. Ex. A at 16, 18-19). In a grievance addressed to the warden, Plaintiff stated in pertinent part:

> "[O]n Sunday morning [April 19, 2015] we were once again handed two empty kosher bags. Officer Fogel [sic] refused to do anything about it, saying we should have checked our bags before pulling them into our room, but on Monday morning 4-20-15, when we tried to check our bags on the flap, <u>he shoved them into our room by force and singled me out saying he would gas me if I ever did that again</u>. He then came back to the flap threatening me to never come to the flap again and took my name so that he could make up a false report.

<u>Id.</u> (emphasis added).[5] Then, in a second grievance addressed to the "colonel," Plaintiff wrote:

> [O]n 4-19-15, it was Officer Fogel [sic] who supervised the theft [of the dormitory's breakfast biscuits], who also refused to give us any food because as he said: we did not check our bags before pulling them inside our room…
>
> However, on 4-20-15, Sunday, the next morning, when we did try to check our bags while they were still on this flap, the runaround attacked us on camera, and because I personally did not stop opening my bag to see what was in it, <u>Officer Fogel shoved my bag and hands back into my room and threatened me, saying that he would "gas" me if I ever checked my kosher bag again</u>. He then came back to collect our empty bags and told me to never comt to 'his' flap again to collect my meal. In other words, I must now refuse to come to the flap to get my food.

<u>Id.</u> at 18-19 (emphasis added). In both of these grievances, unlike in the current case, Plaintiff says nothing about Officer Fogle threatening him with retaliation <u>if he reported</u> the food flap incident. Rather, just like Ross stated in his affidavit, Plaintiff wrote that Officer Fogle threatened to gas him if he ever placed his hands through the food flap or checked his kosher bag again, not if he filed a grievance.

Plaintiff contradicted himself a third time as well. Plaintiff attached to his response an informal grievance that he purportedly filed (or tried to file) about the food flap incident on June 6, 2015, Doc. 97-1 at 1 (what Plaintiff refers to as "exhibit A001"), 49 days after it occurred. Thus, this informal grievance was filed outside the 20-day timeframe for doing so. Fla. Admin. Code § 33-103.011(1)(a); <u>see also</u> Reply at 1. Plaintiff explained the delay as follows:

> In April Officer Fogel [sic] slammed the food flap on my hand. <u>I did not say much at the time because it just hurt some. But now something seems to be turning wrong with my hand and they will not let me see the nurse</u>. My handwriting is becoming different. I need to see someone, please.

---

[5] Plaintiff is inconsistent about the date of the food flap incident, saying in this informal grievance that it occurred on April 20, 2015. However, the Court regards the one-day discrepancy as immaterial.

(Doc. 97-1 at 1) (emphasis added). Thus, according to Plaintiff himself, the reason why he did not file a grievance before June 6, 2015 is simply that his hand did not hurt all that much. Plaintiff did not say that Officer Fogle "immediately threatened [him] not to report the matter" (compare Doc. 98 at 1-2 ¶ 3), or that "he was going to gas me if I said anything" about the incident (compare Def. Ex. B at 6). As such, Plaintiff's account in the informal grievance contradicts his current claim that Officer Fogle threatened him with retaliation if he reported him for slamming the food flap on his hand.

On the June 6, 2015 informal grievance form, there is a handwritten note at the bottom that states: "Do not say anything about this again!!!" (Doc. 97-1 at 1) (emphasis in original). Plaintiff suggests that Officer Fogle's superior, Captain Butler, wrote this on the form and "handed [it] back to him with the threat that if he ever mentioned the injury to his hand ever again, he would never make it out of here alive." (See Doc. 98 at 2-3 ¶ 7) (citing Doc. 97-1 at 1). Given the lack of any formal markings, signatures, or receipt stamps at the bottom of the grievance form, it is dubious that a corrections officer actually received this grievance and wrote the statement at the bottom of the page. Moreover, it is very unlikely a corrections officer would leave such an obviously incriminating paper trail by writing "Do not say anything about this again!!!" on the grievance form and then hand it back to the prisoner to keep. It would be all too easy for a prisoner to fabricate a story of retaliation by completing a grievance form, then writing such an intimidating statement on the form himself, and claiming that it was written by a corrections officer. See Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001) (claims of retaliation must be scrutinized with particular care because such claims are easily fabricated), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002); Flynn v. Scott, No. 2:04-CV-239-DRB,

2006 WL 1236718, at *5 (M.D. Ala. May 8, 2006) (same). Nevertheless, even assuming Captain Butler threatened Plaintiff when Plaintiff gave him the June 6, 2015 grievance, such a threat could not be what prevented Plaintiff from initiating the grievance process. The June 6, 2015 grievance, written 49 days after the food flap incident, was already 29 days too late. See Fla. Admin. Code § 33-103.011(1)(a). As such, Captain Butler's alleged threat could not be what prevented Plaintiff from properly exhausting his administrative remedies as required by the PLRA.[6]

Plaintiff claims that other threats of retaliation made administrative remedies unavailable, but these alleged threats also cannot explain the failure to exhaust because they were made after the 20-day limitations period had expired to file an informal grievance. In his declaration, Plaintiff points the Court to an "emergency grievance" he filed on May 15, 2015, where he alleges that on May 12, 2015 and May 13, 2015, a Lieutenant Lister and other officers threatened him and his cellmate with retaliation for filing grievances. (Doc. 98 at 1-2 ¶ 3) (citing Def. Ex. A at 10 ("grievance # 1504-230-278")).[7] However, these threats could not have prevented Plaintiff from properly exhausting administrative remedies concerning the April 19, 2015 food flap incident. Plaintiff had 20 days to file an informal grievance regarding the matter (or less if he chose to pursue a formal grievance or a direct grievance)[8], meaning he had until May 9, 2015 at the latest to

---

[6]     Any suggestion that the prison would have waived the 20-day limitations period and considered the June 6, 2015 informal grievance, but for Captain Butler allegedly returning the grievance and threatening Plaintiff, is entirely too speculative.

[7]     Grievance # 1504-230-278 mentions the alleged starvation and threats of retaliation, but does not say anything about Officer Fogle slamming the food flap on Plaintiff's hand. (Def. Ex. A at 10).

[8]     If a prisoner skips the informal or formal grievance step because his grievance is of an emergency nature or is a grievance of reprisal, for example, the prisoner has only 15 days from the action being grieved to do so. Fla. Admin. Code § 33-103.011(1)(b), (d).

initiate the process. Because these threats occurred on May 12 and May 13, after the 20-day limitations period had already expired, they cannot explain Plaintiff's failure to properly exhaust.

Finally, Officer Fogle's and the other officers' alleged threats of retaliation could not have actually deterred Plaintiff from filing a grievance because the record shows that Plaintiff continued to avail himself of the grievance process after April 19, 2015. Indeed, the very next day, Plaintiff filed two emergency grievances with the warden about the alleged deprivation of food. (Def. Ex. A at 16, 18-19). In fact, Plaintiff named Officer Fogle himself (id.), one of the very officers he claims to have threatened him, as being responsible for depriving him of food (though Plaintiff said nothing about Officer Fogle slamming the food flap on his hand). Plaintiff filed a third grievance on April 21, 2015 as well, also complaining about the deprivation of food. (Id.). Overall, Plaintiff filed 20 grievances between April 19, 2015 and December 31, 2015 alone. (See id. at 5-7). The Court may "appropriately consider[ ] [Plaintiff's] history of filing grievances as evidence that the defendants did not make administrative remedies unavailable to him … or destroy his grievances." Whatley II, — F.3d —, 2018 WL 3616779, at *8. Plaintiff's abundant grievance record reflects that the alleged threats of retaliation, if they even occurred, were not what prevented him from filing a grievance about Officer Fogle allegedly slamming the food flap on his hand.

Based on the totality of the record and the reasons stated above, the Court does not find Plaintiff's claim credible that Officer Fogle or others threatened him not to report the food flap incident. Even if officers did make such threats toward Plaintiff, those threats are not what actually caused him to fail to exhaust administrative remedies. Accordingly,

the Court finds that Plaintiff has not excused his failure to exhaust, and therefore that the excessive force claim against Officer Fogle for slamming the food tray flap on his hand is due to be dismissed.

## V.    Deprivation of Food

The Court now considers Defendants' Motion with respect to Plaintiff's claim that Defendants took turns depriving him of food from April 16, 2015 to April 22, 2015. Plaintiff clarified in his deposition that he and his cellmate still received lunch and dinner on those dates "with no issues," only that they were denied breakfast each morning. (Def. Ex. B at 3). Plaintiff claims that the deprivation of breakfast for those seven days rose to the level of cruel and unusual punishment in violation of the Eighth Amendment.

The Court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)). Therefore, for purposes of this Motion, the Court assumes as true that Officer Pittman, Officer Fogle, Sergeant Janosh, and Sergeant Morgan deprived Plaintiff of breakfast for seven days, as Plaintiff alleges.

The Eighth Amendment forbids punishments that are cruel and unusual in light of contemporary standards of decency. U.S. Const. amend. VIII; Ford v. Wainwright, 477 U.S. 399, 405-06 (1986). Accordingly, the Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive in prison. Farmer v. Brennan, 511 U.S. 825, 832 (1994). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care," and must "protect prisoners from violence at the hands of other prisoners." Id. at 832-33 (internal quotation omitted).

"But the Constitution does not mandate comfortable prisons." <u>Rhodes v. Chapman</u>, 452 U.S. 337, 349 (1981). If prison conditions are "restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." <u>Id.</u> at 347. "[A] prisoner's mere discomfort, without more, does not offend the Eighth Amendment." <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1295 (11th Cir. 2004).

To state an Eighth Amendment violation, a prisoner must allege facts to satisfy both an objective and subjective inquiry regarding a prison official's conduct. <u>Id.</u> at 1289. Under the "objective component," a prisoner must allege a condition that is sufficiently serious to violate the Eighth Amendment. <u>Id.</u> The challenged condition must be extreme and must pose an unreasonable risk of serious damage to the prisoner's future health or safety. <u>Id.</u> The Eighth Amendment only guarantees that prisoners are provided with a minimal civilized level of life's basic necessities. <u>Id.</u> Restrictive or even harsh conditions alone do not rise to the level of an Eighth Amendment violation. <u>Id.</u>

Second, the prisoner must allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference. <u>Id.</u> "[D]eliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." <u>Farrow v. West</u>, 320 F.3d 1235, 1245 (11th Cir.2003) (internal quotation omitted).

Under the Eighth Amendment, a prisoner is only entitled to reasonably adequate nutrition. <u>See</u> <u>Hamm v. DeKalb Cnty.</u>, 774 F.2d 1567, 1575 (11th Cir.1985). A prison does not violate the Eighth Amendment by feeding a prisoner a minimal amount of food for a limited number of days. <u>Novak v. Beto</u>, 453 F.2d 661, 665, 668 (5th Cir.1971) (no Eighth Amendment violation when prisoner in solitary confinement was fed two slices of bread

per day, unlimited water, and a full meal every three days, and that restrictive diet did not extend beyond 15 days).[9]

Turning to this case, Defendants are entitled to summary judgment on Plaintiff's deprivation-of-food claim. As a matter of law, refusing to serve Plaintiff breakfast for seven days, from April 16, 2015 to April 22, 2015, while still providing him lunch and dinner each day, is not sufficiently serious to violate the Eighth Amendment. See Chandler, 379 F.3d at 1289. There is ample case law supporting the conclusion that such a denial of food does not rise to the level of threatening an inmate's health and well being. For example, in Hernandez v. Fla. Dep't of Corr., the Eleventh Circuit held that depriving an inmate of lunch for five days a week, over the course of five months, did not "pose[ ] an unreasonable risk of serious damage to his health" where he was still provided the other two meals of the day. 281 F. App'x 862, 866 (11th Cir. 2008). And in Novak, cited above, the former Fifth Circuit found no Eight Amendment violation under more extreme circumstances, where the prisoner was fed just two slices of bread per day, unlimited water, and a full meal only once every three days for 15 days. 453 F.2d at 665, 668. Other examples abound. In Gardner v. Beale for instance, the Fourth Circuit rejected a prisoner's Eighth Amendment claim where the prison served him only two meals a day, with an 18-hour delay between dinner and brunch, for 48 days. 998 F.2d 1008, 1993 WL 264459, at *1-2 (4th Cir. 1993). And in Green v. Ferrell, the Fifth Circuit held that the Eighth Amendment did not require a jail to serve inmates three meals per day each day, because there was no evidence that

---

[9]     Decisions by the former Fifth Circuit Court of Appeals, handed down before the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981).

inmates were suffering medical problems caused by an inadequate diet. 801 F.2d 765, 770-71 (5th Cir. 1986).

In light of the above, the Court finds that denying Plaintiff breakfast for seven days, while still providing him lunch and dinner, was not such an extreme deprivation that it posed an unreasonable risk of serious damage to Plaintiff's future health or safety. Chandler, 379 F.3d at 1289 (citations omitted). Indeed, nothing in Plaintiff's medical records shows that he suffered from malnutrition or other health problems due to the deprivation of breakfast. (See Def. Ex. C (Doc. 104, Doc. 104-1)). Likewise, Plaintiff acknowledged that at no point between April 16, 2015 and April 22, 2015 did he request to "see medical" or complain about any medical issues. (Def. Ex. B at 4). Accordingly, the Court finds that, even taking Plaintiff's allegations as true, the deprivation-of-food claim does not objectively violate the Eighth Amendment, and thus Defendants are entitled to summary judgment on this claim.

## VI.    Excessive Force

The Court has previously determined that Plaintiff failed to exhaust administrative remedies with respect to the Eighth Amendment excessive force claim against Officer Fogle for "slamming" the food tray flap on his hand. Ante at Part IV. Here, the Court explains why, in the alternative, even if Plaintiff had exhausted his administrative remedies, Officer Fogle is still entitled to summary judgment. The record, which includes Plaintiff's own contemporaneous account of events, contradicts his claim that Officer Fogle "slammed" the food tray flap on his hand. The record also negates Plaintiff's claim that the incident caused him to suffer a hand injury. Nevertheless, even if the Court assumes that

Plaintiff's allegations are true, Officer Fogle's actions did not amount to excessive force in violation of the Eighth Amendment.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. Const. amend. VIII. In an excessive force case, the core inquiry is "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). "If force is used 'maliciously and sadistically for the very purpose of causing harm,' then it necessarily shocks the conscience. If not, then it does not." Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (per curiam) (internal citation omitted) (quoting Brown v. Smith, 813 F.2d 1187, 1188 (11th Cir. 1987)). As with other claims under the Eighth Amendment, the Court must "consider both a subjective and objective component: (1) whether the 'officials act[ed] with a sufficiently culpable state of mind,' and (2) 'if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation.'" Tate v. Rockford, 497 F. App'x 921, 923 (11th Cir. 2012) (per curiam) (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)), cert. denied, 133 S.Ct. 1822 (2013).

Not "every malevolent touch by a prison guard gives rise to a federal cause of action." McMillian, 503 U.S. at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9–10 (quotation marks omitted). As such, "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010). A lack of

serious injury is relevant to the inquiry, but "[i]njury and force ... are only imperfectly correlated and it is the latter that ultimately counts." Id.

Officer Fogle argues there is no evidence to support Plaintiff's claim that he slammed the food flap on Plaintiff's hand. Motion at 11. Officer Fogle also argues there is no evidence to support Plaintiff's claim that he suffered a hand injury. Id. As such, Officer Fogle argues that he is entitled to summary judgment on the excessive force claim. Officer Fogle is correct.

The party seeking summary judgment has the initial burden of demonstrating, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). But once the "moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (internal citations and quotation marks omitted). An issue is genuine if there is enough evidence that a reasonable jury could return a verdict in favor of the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson, 477 U.S. at 252). The Court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment," Haves, 52 F.3d

at 921, but that does not mean a court must accept the non-moving party's version of the facts if the record plainly contradicts it, Scott, 550 U.S. at 380.

The record contradicts Plaintiff's claim that Officer Fogle "slammed" the food flap on his hand. See TAC at 5. Notably, that record includes Plaintiff's own contemporaneous account of events. In a grievance he filed on April 20, 2015, the very day after the alleged incident, Plaintiff complained that Officer Fogle "refused to do anything" about the denial of breakfast, and that the following day when Plaintiff and his cellmate were checking their food bags, Officer Fogle "shoved them into our room by force and singled me out saying he would gas me if I ever did that again." (Def. Ex. A at 16). Plaintiff said nothing about Officer Fogle slamming the food flap on his hand or doing anything to harm him. In a second grievance filed on April 20, 2015, Plaintiff likewise describes Officer Fogle as shoving his hands and his food bag back into the prison cell when he tried to check the bag, but did not say that Officer Fogle "slammed" the flap on his hand or caused any injury. (Def. Ex. A at 19). Thus, quite unlike the TAC, Plaintiff's own contemporaneous account of events was that Officer Fogle pushed his hands and/ or his food bag back into the prison cell, which is a far cry from saying that Officer Fogle slammed the food tray flap on his hand. And quite unlike the TAC, Plaintiff did not say anything in either of the April 20, 2015 grievances about suffering a hand injury.

Not only do Plaintiff's own grievances contradict his excessive force claim, but so does his cellmate's affidavit. Jerry Ross's description of the encounter between Plaintiff and Officer Fogle goes as follows:

> On 4-19-15 at breakfast time, ofc Fogle the serving officer, that once when our religion diet[s] were put on the flap, I grab one to check to see if my food was their [sic], my bunky [Plaintiff] was looking through the cell window trying to check his bag, when the run-around came by, and took his forearm, and

tried to push the bag, and my bunky hands into the cell, then ofc Fogle came, and pushed the bag, and my bunky hand into the cell, then ofc. Fogle stated, "The next time you do that I will gas you."

Def. Ex. A at 12 ¶ 3.[10] Like both of Plaintiff's April 20, 2015 grievances, and unlike the TAC, Ross describes Officer Fogle as having "pushed" Plaintiff's food bag and his hand into the cell, not as slamming the food flap on his hand. Also like Plaintiff's April 20, 2015 grievances, and contrary to the TAC, Ross does not describe Plaintiff as hurting his hand in any fashion. Taken together, Ross's affidavit and Plaintiff's contemporaneous grievances form a consistent account of what happened, which is that Officer Fogle "pushed" or "shoved" Plaintiff's food bag and/ or his hand back into the prison cell, not that Officer Fogle slammed the food tray flap on his hand or that Plaintiff suffered an injury.

Moreover, even if Officer Fogle did slam the food flap on Plaintiff's hand, there is no evidence to support Plaintiff's claim that Officer Fogle's actions <u>caused</u> an injury to his hand. Plaintiff's medical record contains no evidence that he suffered a hand injury on or around April 19, 2015. In support, Officer Fogle attached the declaration of Dr. Maier, a senior physician with FDOC. (Doc. 104 at 2-3). Dr. Maier states that he undertook a review of Plaintiff's "complete medical records maintained by FDC through July 2017, including a review of the medical documents accompanying this declaration, which total 240 pages." (<u>Id.</u> at 2 ¶ 3). "These documents were made at or near the time of the occurrences of the matters set forth by, or from information transmitted by, people with knowledge of those matters." (<u>Id.</u> at 2 ¶ 5). Dr. Maier states that it is FDOC's practice to keep and maintain

---

[10] Plaintiff also submitted affidavits from two other inmates, Roger Cohen and Steven D'Amico (Doc. 97-1 at 7-9), but these affidavits are unhelpful because they do not concern the events at issue in the TAC.

these documents in the course of regularly conducted business. (Id. at 2 ¶¶ 6-7). According to Dr. Maier:

> Plaintiff's medical records contain no documented medical evidence of any style of injury or trauma to either hand on April 19, 2015 nor in the immediate vicinity of said date. In fact, medical encounters occurring around the date of April 19, 2015 fail to mention any style of injury to any body part. The available medical records document multiple allegations of non-penetrative sexual harassment or contact touching by other inmates, but no mention of any extremity injury is presented. For each such complaint, a complete PREA [Prison Rape Elimination Act] assessment was executed with benign results.

(Id. at 3 ¶ 10).

Indeed, the record contains no evidence that Plaintiff filed any complaint of a hand injury around the time of the April 19, 2015 incident. Plaintiff filed several requests or grievances of a medical nature between March 2015 and June 2015, but none mentioned a hand injury. (See Doc. 104-1 at 67-68, 107-11). Rather, they concerned such things as requesting eyeglasses, ibuprofen, and triamcinolone cream or ointment. (Id.). Plaintiff himself acknowledges that he did not seek medical attention at any time between April 16, 2015 and April 22, 2015. (See Def. Ex. B at 4). Additionally, a Periodic Screening Form dated June 22, 2015 (id. at 100) indicated there had been "no change" in Plaintiff's condition since the last evaluation, which was conducted May 30, 2014 (see id. at 102-03).[11] In fact, the June 22, 2015 Periodic Screening Form indicated that Plaintiff's "health has improved." (Id. at 100). There is no mention of any injury to Plaintiff's hand. (See id. at 100-01).[12] Plaintiff still insists that Officer Fogle caused him to suffer an injury to his hand,

---

[11]     It appears that Plaintiff's periodic screenings are scheduled for once a year. (See id. at 101, 103).

[12]     The June 22, 2015 Period Screening Form does state that Plaintiff should avoid lifting more than 20 pounds and should avoid prolonged standing (id. at 101), but this appears to be due to a bulging disc that Plaintiff has suffered since October 2014, not due to a hand injury (see id. at 121).

but "[s]elf-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records." <u>Whitehead v. Burnside</u>, 403 F. App'x 401, 403 (11th Cir. 2010) (citing <u>Bennett v. Parker</u>, 898 F.2d 1530 (11th Cir. 1990)).

The first instance in the record of Plaintiff complaining about a hand injury came in an inmate sick-call request filed on November 25, 2015, over seven months after the alleged incident with Officer Fogle (and more than two months after he filed the instant lawsuit). (<u>See</u> <u>id.</u> at 56).[13] Plaintiff complained of an injury to his right hand that he said he received in April, which he claimed was affecting his handwriting. (<u>Id.</u>) Plaintiff did not say how he received the injury though. Plaintiff also complained of an injury to his right knee and shoulder, as well as migraines and blurry vision. (<u>Id.</u>) According to the "subjective" portion of the treating nurse's notes, Plaintiff's pain began around August 20, 2015 (<u>id.</u> at 54), four months after the alleged incident with Officer Fogle. The nurse's notes reflect that Plaintiff had intermittent numbness or tingling in his hand, but that he had "good grip strength" and was "well muscled and exercising." (<u>Id.</u>). Notably, none of the medical records indicate what caused the numbness or tingling in Plaintiff's hand. As Officer Fogle points out, Plaintiff has not shown that any impairment to his hand was attributable to Officer Fogle's conduct. Motion at 18. Indeed, the record reflects that Plaintiff has suffered from a bulging disc since at least 2014 (<u>see</u> Doc. 104-1 at 121), and that Plaintiff sustained

---

[13]     Plaintiff counters that he filed other complaints about an injury to his hand before November 2015, but that such complaints or grievances were lost or destroyed. <u>See</u> Response at 3-4 (citing Doc. 97-1 at 2-3 (what Plaintiff calls "exhibit A002"), Doc. 97-1 at 6 (what is presumably Plaintiff's "exhibit A004.")). However, according to Plaintiff himself, even the earliest of these lost medical grievances was filed on August 31, 2015 (<u>see</u> Doc. 97-1 at 3), over four months after the food flap incident, which still undermines his suggestion that Officer Fogle's alleged conduct caused his injury. Moreover, Plaintiff provides no evidence to support his conclusory assertion that the medical ward lost or destroyed his complaints about a hand injury.

all manner of injuries to his hands while working in construction (Def. Ex. B at 5). Plaintiff has offered no evidence that Officer Fogle's alleged conduct, rather than one of these other injuries, caused the numbness or tingling that began in his right hand in August 2015.

What is more, Plaintiff claims that the injury manifested itself in the form of impairing his handwriting. TAC at 4. Here again, the record contradicts Plaintiff's suggestion that Officer Fogle's conduct was the cause. A review of Plaintiff's handwritten grievances before and shortly after April 19, 2015 speak for themselves, as they reflect no diminution in the quality of Plaintiff's handwriting. (Compare Doc. 104-1 at 111-22 (before) with id. at 67, 106-10 (two weeks to three months after)).

Based on the above, there is no genuine dispute of fact about whether Officer Fogle caused an injury to Plaintiff. Plaintiff's contemporaneous account of events, as well as his cellmate's affidavit, contradict his current claim that Officer Fogle "slammed" the food flap on his hand. At most, Officer Fogle "pushed" or "shoved" Plaintiff's hand and/or food bag back into the prison cell after Plaintiff stuck his hands through the flap to check his bag. This use of force was not enough to prompt Plaintiff to complain of any injury at the time. Moreover, Officer Fogle has produced evidence that Plaintiff did not suffer any injury to his hand around the time of the April 19, 2015 incident. Plaintiff has not produced anything that counters Officer Fogle's evidence, such that a reasonable jury could find in his favor that Officer Fogle used excessive force or caused a discernible injury. As the Supreme Court has recognized, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." McMillian, 503 U.S. at 9 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails

to state a valid excessive force claim." Wilkins, 559 U.S. at 38. Such is the case here, where Officer Fogle's actions at most amounted to a "push or shove," and where Plaintiff suffered no discernible physical harm.

Moreover, even if all of Plaintiff's factual allegations are true, and Officer Fogle slammed the food tray flap on Plaintiff's hand, causing him to experience pain and difficulty writing, such a claim still would not rise to the level of an excessive force violation under the Eighth Amendment. See Johnson v. Moody, 206 F. App'x 880 (11th Cir. 2006). Johnson involved very similar factual allegations to this case. There, an inmate alleged that a corrections officer kicked the metal tray door on his hand in an attempt to break his finger, causing an injury. Id. at 881. The medical records reflected that as a result of the incident, the inmate "sustained a cut to his right middle finger for which he was given Motrin, a bandage, and a tetanus shot." Id. at 882. The inmate continued to make sick call requests and receive treatment for pain in his right middle finger for over six months afterward. Id. The Eleventh Circuit found that, among other things, the superficial nature of the injury and the fact that the officer only kicked the tray door once showed that the officer did not subjectively use force maliciously and sadistically for the purpose of causing harm. Id. at 884. The Eleventh Circuit further found that the inmate's injury was not objectively harmful enough to establish a constitutional violation, id. at 884-86, because "the minor nature of Johnson's injury suggests that the force applied was de minimus [sic]." Id. at 885.

This case is analogous to Johnson. As in Johnson, the de minimis nature of the alleged injury to Plaintiff's hand, in tandem with the allegation that Officer Fogle simply slammed the food flap shut, does not show that Officer Fogle subjectively used force

31

maliciously and sadistically for the very purpose of harming Plaintiff. Moreover, the <u>de minimis</u> nature of Plaintiff's alleged injury "suggests that the force applied was [<u>de minimis</u>]," which does not objectively amount to an Eighth Amendment violation. <u>Id.</u> As such, even taking Plaintiff's allegations as true (though the record does not require such an assumption), Officer Fogle is entitled to summary judgment on Plaintiff's excessive force claim.

### VII. Retaliation

Finally, Defendants argue that they are entitled to summary judgment on Plaintiff's claim that they retaliated against him for reporting the theft of the dormitory's breakfast biscuits, in violation of the First Amendment. Motion at 11-13.

While a person loses many rights when he is sent to prison, a prisoner retains the right to petition the government for a redress of grievances. <u>See</u> <u>Douglas v. Yates</u>, 535 F.3d 1316, 1321 (11th Cir. 2008). The "First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment." <u>Boxer X v. Harris</u>, 437 F.3d 1107, 1112 (11th Cir. 2006). "The core of [a retaliation claim] is that the prisoner is being retaliated against for exercising his right to free speech." <u>O'Bryant v. Finch</u>, 637 F.3d 1207, 1212 (11th Cir. 2011) (per curiam) (citation omitted), <u>cert.</u> <u>denied</u>, 133 S. Ct. 445 (2012). A retaliation claims involves three elements:

> [T]he inmate must establish that: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance]."

Id. (first alteration added, remainder in original) (footnote omitted) (quoting Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008)).

In the TAC, Plaintiff alleged that he and his cellmate reported the theft of the dormitory's breakfast biscuits to Officer Pittman. Id. at 5. Upon reporting the theft of the biscuits, Officer Pittman "became furious and threatened to see to it that we were starved 'to death.'" Id. Then Officer Pittman and the other Defendants took turns denying Plaintiff and his cellmate their food. Id. As Plaintiff clarified during his deposition, he and his cellmate still received lunch and dinner, but they were denied breakfast each day. (Def. Ex. B at 3). The denial of breakfast lasted seven days, beginning April 16, 2015, and ending on April 22, 2015. TAC at 5. Plaintiff alleges that the Defendants deprived him of food "in retaliation for reporting Pittman" regarding the theft of the breakfast biscuits. Id. at 4. Plaintiff seeks compensatory, punitive, and nominal damages for each day he was "starved" by Defendants. Id. at 5. Plaintiff also seeks damages for "pain and suffering, emotional suffering, as well as all expenses and court costs involved." Id.

In the Motion, Defendants do not contest "that Plaintiff's report of stolen biscuits is constitutionally protected speech." Motion at 13. Defendants also do not contest that Plaintiff was denied one meal a day for seven days. Id. Nor do Defendants provide any argument or any evidence to refute the third element, which is that there was a causal relationship between Plaintiff reporting the stolen biscuits and Defendants then denying him breakfast in retaliation. See id.[14] Rather, Defendants rest their argument entirely on

---

[14]    Plaintiff's allegation that he and his cellmate reported the theft of breakfast biscuits to Officer Pittman, "who then became furious and threatened to see to it that we were starved 'to death,' and then refused us our food," TAC at 5 (emphasis added), fairly suggests that Officer Pittman's threat was temporally immediate and in direct response to Plaintiff reporting the theft. This allegation, which Defendants do not refute, is enough to imply causation for purposes of the third element of a retaliation claim. Alvarez v. Sec'y, Fla. Dep't of Corr., 646 F. App'x 858, 864-65

the second element, whether "the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech." O'Bryant, 637 F.3d at 1212. Defendants argue that being denied breakfast each day for a week would not deter a person of ordinary firmness from filing a grievance because such a deprivation "is no more than a de minimus [sic] inconvenience." Motion at 13. As such, Defendants argue, Plaintiff's retaliation claim must fail and they are entitled to summary judgment.

The Court cannot agree. "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Bennett v. Hendrix, 423 F.3d 1247, 1254 (11th Cir. 2005). This test is a decidedly objective one; it is concerned with how the adverse action would impact a person of "ordinary firmness." The test is not about whether the retaliatory conduct actually chilled the plaintiff's speech. Id. at 1251-52. The Eleventh Circuit explained further:

> An objective standard provides notice to government officials of when their retaliatory actions violate a plaintiff's First Amendment rights. In contrast, "a subjective standard would expose public officials to liability in some cases, but not in others, for the very same conduct, depending upon the plaintiff's will to fight." [Constantine v. Rectors and Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005)]. "[I]t would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity ...." [Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1300 (9th Cir. 1999)]. There is no reason to "reward" government officials for picking on unusually hardy speakers. At the same time, we recognize that government officials should not be liable when the plaintiff is unreasonably weak-willed or suffers only a "de minimis inconvenience to her exercise of First Amendment rights." Constantine, 411 F.3d at 500 (internal quotation omitted); see also [Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982)] ("It would trivialize the First Amendment to hold that harassment for exercising

_____

& n.6 (11th Cir. 2016) (temporal proximity between the protected speech and the retaliatory action can imply causation).

the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise ....”). The “ordinary firmness” test is therefore protective of the interests of both government officials and plaintiffs alleging retaliation.

Id. “[S]ince there is no justification for harassing people for exercising their constitutional rights [the harassment] need not be great in order to be actionable.” Id. at 1254 (quoting Bart, 677 F.2d at 625). Conduct that might not amount to a constitutional violation on its own may nonetheless be actionable if done in retaliation against a person for exercising their First Amendment rights. Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995)); Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000) (citing Pratt, 65 F.3d at 806-07, and Babcock v. White, 102 F.3d 267, 274-75 (7th Cir. 1996)).

Would depriving a person of breakfast for seven straight days, even though it is not an independent Eighth Amendment violation, deter a person of ordinary firmness from exercising their First Amendment rights? Perhaps so. At least two other courts have found that similar deprivations would deter a person of ordinary firmness from exercising their right to free speech. In Watison, the Ninth Circuit held that a prisoner had adequately alleged an adverse action where a corrections officer refused him breakfast in retaliation for filing a grievance. 668 F.3d at 1116. And in Taylor v. Crews, the district judge found that yelling at the plaintiff in front of other inmates for filing a grievance and refusing the plaintiff breakfast one morning could deter a person of ordinary firmness from exercising their right to free speech. Case No. 4:14cv98–MW/CAS, 2015 WL 5042721, at *7-8 (N.D. Fla. July 27, 2015), report and recommendation adopted, 2015 WL 5042805 (N.D. Fla. Aug. 26, 2015).

However, Defendants overlook the fact that the alleged retaliatory conduct consisted of more than depriving Plaintiff of breakfast for a week. Plaintiff also alleged that once he reported the theft of the dormitory's breakfast biscuits to Officer Pittman, Officer Pittman "became furious" and threatened to starve Plaintiff and his cellmate to death. TAC at 5.[15] Defendants do not refute, or even address, this alleged threat. <u>See</u> Motion at 11-13. Officer Pittman then coupled this threat with action, as Plaintiff and his cellmate were then denied breakfast each day during his watch.[16] The Eleventh Circuit has found that when a corrections officer threatens to physically harm a prisoner in retaliation for filing a grievance, a reasonable jury could find that such a threat would deter a person of ordinary firmness from exercising their First Amendment rights. <u>Pittman v. Tucker</u>, 213 F. App'x 867, 870-71 (11th Cir. 2007). Likewise, in the context of exhaustion, the Eleventh Circuit has said that serious threats of substantial retaliation, such as transferring the prisoner to a facility far away from his family, would deter a person of ordinary firmness from pursuing administrative remedies. <u>Turner</u>, 541 F.3d at 1084-85. Officer Pittman's threat to starve Plaintiff and his cellmate to death is the type of threat of physical harm that could certainly deter a person of ordinary firmness from exercising their right to petition the government for a redress of grievances.

The Court recognizes that despite Officer Pittman's alleged threat and the deprivation of food, Plaintiff nevertheless continued to file grievances. (<u>See</u> Def. Ex. A). The Court also recognizes that in certain unpublished decisions, the Eleventh Circuit

---

[15]     Because Defendants offered no argument or evidence that refutes Plaintiff's allegation that Officer Pittman threatened him, the Court must assume Plaintiff's allegation to be true.

[16]     According to Plaintiff, the only reason why he and his cellmate still received the other two daily meals is because the supervisors were present during the day shift. (<u>See</u> Def. Ex. B at 3-4). However, the night shift officers were not going to stand in Officer Pittman's way. (<u>Id.</u>).

considered the fact that the prisoner persisted in filing grievances as evidence that the retaliatory conduct would not have deterred a person of ordinary firmness from exercising their free speech rights. Mitchell v. Thompson, 564 F. App'x 452, 457 (11th Cir. 2014); Williams v. Barrow, 559 F. App'x 979, 987 (11th Cir. 2014); Lovette v. Paul, 442 F. App'x 436, 437 (11th Cir. 2011). However, these cases are distinguishable because none involved a prison official making specific threats of physical harm against the inmate. Moreover, the Eleventh Circuit has emphatically held that, for purposes of First Amendment retaliation claims, the question is whether the retaliatory conduct would have deterred a person of ordinary firmness from exercising their First Amendment rights, not whether the conduct actually deterred the plaintiff. Bennett, 423 F.3d at 1251-52. Thus, the Court declines Defendants' invitation to rule that threatening to starve Plaintiff to death, coupled with denying him breakfast for a week, would not deter a person of ordinary firmness from filing a grievance. As such, Defendants' Motion is due to be denied with respect to Plaintiff's First Amendment retaliation claim.

## VIII.   Damages

That having been said, Plaintiff's recovery in connection with the retaliation claim, if any, must be limited to nominal damages. Plaintiff seeks compensatory, punitive, and nominal damages for each day he was "starved" by Defendants, as well as damages for "pain and suffering" and "emotional suffering." TAC at 5. Defendants correctly argue that under 42 U.S.C. § 1997e(e), Plaintiff cannot recover compensatory and punitive damages because he did not suffer a physical injury. Motion at 13-18.

Section 1997e(e) provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

42 U.S.C. § 1997e(e). The purpose of this limitation on damages is "to reduce the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002). "Congress has wide latitude to decide how violations of [federal] rights shall be remedied" and through the PLRA, "Congress has chosen to enforce prisoners' constitutional rights through suits for declaratory and injunctive relief, and not through actions for damages." Harris v. Garner, 190 F.3d 1279, 1289 (11th Cir.1999), reh'g en banc granted and opinion vacated, 197 F.3d 1059 (11th Cir. 1999), opinion reinstated in relevant part, 216 F.3d 970 (11th Cir. 2000). The Eleventh Circuit has interpreted § 1997e(e) to mean that compensatory and punitive damages are unavailable where the prisoner has not suffered a physical injury. Al-Amin v. Smith, 637 F.3d 1192, 1195-99 (11th Cir. 2011); Smith v. Allen, 502 F.3d 1255, 1271 (11th Cir. 2007) (holding that the PLRA precluded prisoner from recovering compensatory or punitive damages where he alleged no physical injury) (citations omitted).

Here, Plaintiff has not shown that he suffered any physical injury from the retaliatory conduct alleged: being verbally threatened by Officer Pittman and denied breakfast for seven days.[17] Plaintiff's medical records show that he suffered no malnutrition and no health issues from the weeklong denial of breakfast. (See generally Doc. 104, Doc. 104-

---

[17] The Court does not read the TAC as alleging that the retaliatory conduct included Officer Fogle slamming the food flap on Plaintiff's hand. Even if Plaintiff intended that, however, the Court has already found that Officer Fogle either did not slam the food flap as Plaintiff alleged, or that Plaintiff's hand injury was non-existent or de minimis.

1). As Dr. Maier states in his declaration, "Plaintiff's medical records contain no documented evidence of food denial nor complaint thereof at any time whatsoever." (Doc. 104 at 3 ¶ 9). Plaintiff himself acknowledges that he did not seek medical attention during the time when he was denied breakfast. (Def. Ex. B at 4). While Plaintiff states that he suffered hunger pangs because of the denial of breakfast (Doc. 99-1 at 1), subjective pain or discomfort alone does not constitute an actionable physical injury, e.g., Quinlan v. Personal Transp. Servs. Co., 329 F. App'x 246, 248-49 (11th Cir. 2009) (§ 1997e(e) barred plaintiff's claims for compensatory and punitive damages because his alleged injuries – temporary chest pain, headache, and difficulty breathing, followed by periodic episodes of back pain – did not "require[ ] immediate medical attention or evidence physical injury besides discomfort.") (citing Harris, 190 F.3d at 1286). Accordingly, Defendants are entitled to summary judgment to the extent that Plaintiff cannot recover compensatory or punitive damages. Plaintiff's recovery, if any, must be confined to nominal damages.

## IX. Conclusion

Based on the record before the Court, Defendants have shown they are entitled to summary judgment on Plaintiff's two Eighth Amendment claims for deprivation of food and the use of excessive force. Defendants are not entitled to summary judgment with respect to Plaintiff's First Amendment retaliation claim because genuine issues of material fact remain. However, Plaintiff's recovery will be limited to nominal damages because he did not suffer any physical injury. Accordingly, it is hereby **ORDERED:**

1. Defendants' Motion for Summary Judgment (Doc. 93), to the extent it is construed as a motion to dismiss Plaintiff's excessive force claim for failure to

exhaust, is **GRANTED**. Plaintiff's excessive force claim against Officer Fogle for slamming the food tray flap on his hand is **DISMISSED**.

2. Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. The Motion is granted with respect to Plaintiff's Eighth Amendment claim regarding the deprivation of food.

    b. As an alternative to dismissal, the Motion is granted with respect to Plaintiff's Eighth Amendment excessive force claim against Officer Fogle.

    c. The Motion is denied with respect to Plaintiff's First Amendment retaliation claim. However, Plaintiff will not be able to recover compensatory or punitive damages with respect to this claim because he has not established that he suffered a physical injury.

**DONE AND ORDERED** at Jacksonville, Florida this 17th day of August, 2018.

BRIAN J. DAVIS
United States District Judge

Lc 19

Copies:

Counsel of record
Pro se plaintiff